EXHIBIT B

| | |
|---|---|
| DISTRICT COURT, LARIMER COUNTY, COLORADO<br>Court Address: 201 La Porte Ave., Suite 100<br>Ft. Collins, CO 80521<br>Telephone: (970) 494-3500 | DATE FILED: November 12, 2020 10:26 AM<br>FILING ID: CAAD48592A619<br>CASE NUMBER: 2020CV30777 |
| **THE TOWNHOMES AT MORNINGSIDE VILLAGE OWNERS ASSOCIATION, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**AMGUARD INSURANCE COMPANY,**<br><br>Defendant. | ▲FOR COURT USE ONLY▲ |
| **ATTORNEY FOR PLAINTIFF:**<br>Jonathan E. Bukowski, #45614<br>MERLIN LAW GROUP, P.A.<br>1001 17th Street, Suite 1150<br>Denver, CO 80202<br>Phone: 720-665-9680<br>Fax: 720-665-9681<br>E-Mail: jbukowski@merlinlawgroup.com | Case Number:<br><br>Div.: Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

**COMES NOW** The Townhomes at Morningside Village Owners Association, Inc., by and through its undersigned counsel, and hereby submits this Complaint and Jury Demand against Defendant, AmGUARD Insurance Company, as follows:

## PARTIES

1. The Townhomes at Morningside Village Owners Association, Inc. ("Plaintiff" or "Morningside Village") is a Colorado nonprofit corporation with its principal office in Westminster, Colorado.

2. Defendant, AmGUARD Insurance Company ("Defendant" or "AmGUARD"), is an insurance company domiciled in the State of Pennsylvania authorized engage in the business of Insurance in the State of Colorado.

Page **1** of **16**

## JURISDICTION AND VENUE

3. This Court has subject matter and personal jurisdiction over the parties to this cause of action.

4. A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

5. Jurisdiction is proper as to AmGUARD pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because AmGUARD conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within Larimer County, Colorado.

6. Venue is proper pursuant to Col.R.Civ.P. 98 because the events which constitute the basis of this Complaint and Jury Demand, including, but not limited to, the formation of the insurance policy and location of the property in question, occurred in Larimer County, Colorado.

## FACTS COMMON TO ALL COUNTS

### A. THE PROPERTY

7. Morningside Village maintains residential real property located in Fort Collins, Colorado (the "Property"):

8. The buildings are clad with various combinations of wood siding and stone. Each building has a fiberglass shingled roof.

### B. APPLICABLE PROVISIONS OF THE INSURANCE POLICY

9. Morningside Village purchased an all-risk, replacement cost value, policy of insurance from AmGUARD under Policy Number TOBP090640 (the "Policy").

10. The Policy was issued on March 25, 2019, with effective dates of April 1, 2019 through April 1, 2020.

11. The Policy's insuring agreement states:

    A. **Coverage**

    We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

12. The Policy does not define direct physical loss.

13. The Policy does not define direct physical damage.

14. At the time of the Storm, the Property was "Covered Property" for purposes of the Policy's insuring agreement.

15. During the underlying insurance Claim, AmGUARD determined and agreed that the Property was "Covered Property" for purposes of the Policy's insuring agreement.

16. At the time of the Storm, direct physical loss of or damage caused by hail was a covered cause of loss under the Policy.

17. During the underlying Claim, AmGUARD determined and agreed that hail damage to the Property resulting from the July 5, 2019, Storm, was a covered cause of loss under the Policy.

18. Pursuant to its Policy, AmGUARD agreed to repair, rebuild and replace damaged Property with materials of like kind and quality.

19. The Policy does not include a matching limiting endorsement or exclusion.

20. The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a reduction of the useful life of the roof covering.

21. The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss of performance of the roof covering.

22. The Policy does not limit or exclude coverage for direct physical loss or damage caused by hail to a roof covering resulting in a loss in the market value of the roof covering.

23. Defendant must pay for the cost to achieve a reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property. *See Hamlet Condominium Ass'n v. American Mutual Family Ins. Co*., 2016 CV 30594 (Co. Dist. Ct., April 12, 2017).

24. The Policy includes an appraisal provision which provides:

> **E.   Property Loss Conditions**
>
> **2.   Appraisal**
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a.   Pay its chosen appraiser; and
> b.   Bear the other expenses of the appraiser and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

25. The Policy further provides that legal action against AmGUARD must be brought within two years of the date of loss:

> **4.   Legal Action Against Us**
>
> No one may bring a legal action against us under this insurance; unless
>
> a.   There has been full compliance with all of the terms of this insurance; and
> b.   The action is brought within 2 years after the date on which the direct physical loss or damaged occurred.

      C.      **THE SUBJECT HAIL AND WIND STORM**

26. On July 5, 2019, during the Policy period, the Property suffered direct physical loss and/or damage resulting from a severe hail and wind storm (the "Storm").

27. The Storm produced hailstones measuring up to 2.50" in diameter that affected the Morningside Village Property.

28. Among other things, hailstones from the Storm struck and damaged the roof coverings of the buildings at the Morningside Village Property, metal roof vent caps, windows, and gutters (the "Loss").

29. Morningside Village promptly reported its Loss to AmGUARD.

30. AmGUARD assigned Claim Number TOBP090640-001-001-001 to Morningside Village's Property Loss (the "Claim").

      D.      **AMGUARD'S CONSTRUCTION CONSULTANT IDENTIFIES HAIL DAMAGE TO PROPERTY RESULTING FROM THE STORM**

31. AmGUARD assigned the Claim to a General Adjuster, Paul Prislupsky.

32. Paul Prislupsky is tasked with the handling of larger or more complex property claims at AmGUARD.

33. AmGUARD retained a company providing construction consulting to inspect the Property and provide an assessment of the amount of loss resulting from the Storm.

34. AmGUARD's construction consultant performed an inspection of the Property in September 2019. During the inspection, AmGUARD's construction consultant determined that five of the seven roofing systems at the Property sustained hail stone impact damage necessitating replacement.

35. On December 13, 2019, AmGUARD's construction consultant prepared an Xactimate[1] repair estimate totaling $360,362.58.

36. On or about December 13, 2019, AmGUARD had sufficient information within its possession to tender covered benefits for the Loss.

37. To date, AmGUARD has not issued payment for the damages outlined within the construction consultant's repair estimate.

### E. MORNINGSIDE VILLAGE SUBMITS ADDITIONAL INFORMATION DEMONSTRATING A COVERED LOSS

38. Morningside Village subsequently retained a Colorado professional licensed engineer to provide an evaluation of the amount of hail stone impact damage to the Property. Morningside Village's professional engineer documented hail impacts to the roofing systems, window screens, and vents to all of the inspected buildings.

39. Morningside Village's professional engineer identified damages overlooked by AmGUARD during its investigation and also confirmed the damages previously identified and presented by AmGUARD's construction consultant.

40. Morningside Village provided AmGUARD with its professional engineering report and requested a reevaluation of the Claim. Morningside Village also provided AmGUARD with a repair estimate for replacement of the roofing systems.

### F. AMGUARD TERMINATES COMMUNICATION COMPELLING MORNINGSIDE VILLAGE TO FILE LITIGATION

41. On June 4 and 5, 2020, Morningside Village again requested that AmGUARD issue payment on the repair estimate prepared by the construction consultant. On June 5, 2020, Paul

---

[1] Xactimate is standard replacement cost estimating software used by adjusters in the insurance industry to calculate the anticipated cost of repair to damaged property by providing price lists for the cost of repairs based on region and date.

Prislupsky notified Morningside Village that AmGUARD was working on getting payment to Morningside Village. AmGUARD never issued payment for the damages outlined within the construction consultant's repair estimate.

42. Morningside Village continued to request release of monies identified within the construction consultant's repair estimate in June, July, August, September, and October 2020, without any response or acknowledgement from AmGUARD or Paul Prislupsky. The lack of communication suggests AmGuard does not wish to cooperate with Morningside Village.

43. On September 14, 2020, Morningside Village provided AmGUARD with its written demand to participate in the appraisal process outlined within the Policy to determine the amount of loss caused by the Storm.

44. Having received no response to its appraisal demand, Morningside Village again demanded AmGUARD participate in the appraisal process and appoint an appraiser to determine the amount of loss. To date, AmGUARD has not responded to or acknowledged Morningside Village's demand for appraisal.

45. Morningside Village has at all times attempted to work with AmGUARD and its representatives to move the claim forward and resolve the existing differences. Unfortunately, the actions of AmGUARD and/or its representatives have made that impossible. AmGUARD, however, has continually refused to pay the full amount due and owing under the policy, and has refused to timely comply with its contractual obligation to submit the dispute over the amount of loss to the appraisal panel.

46. AmGUARD's failure to cooperate has compelled Morningside Village to institute this suit to recover amounts due under its Policy.

47. To date AmGUARD has refused to provide full indemnification to Morningside Village despite knowing that it is required to do so. AmGUARD's conduct was willful, wanton, and done heedlessly and recklessly without regard to the consequences to Morningside Village.

48. AmGUARD knew, or should have known, that its actions were unreasonable. Despite this fact, AmGUARD acted unreasonably and with knowledge, or reckless disregard of, its unreasonableness, thereby causing damages to Morningside Village, including its refusal to release payment for damages identified by its own consultant.

49. Despite its duty to give equal consideration to all information, AmGUARD has ignored documentation provided by Morningside Village illustrating covered damages to the Property.

50. AmGUARD's course of conduct demonstrates its failure to conduct a full, fair, and thorough investigation of Morningside Village's Claim for direct physical loss and damage resulting from Storm.

51. Despite receiving information substantiating a covered loss, AmGUARD has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of Morningside Village's Claim where liability has become reasonably clear.

52. The actions of AmGUARD have caused Morningside Village great financial harm. The cost of repairs to the Property in dispute have increased due to the untenable actions caused by AmGUARD untenable position and its failure to consider the information provided by Morningside Village. Morningside Village has also incurred significant costs to confirm the unpaid damage to the Property.

53. AmGUARD has breached its covenant of good faith and fair dealing that it owes to Morningside Village by engaging in a pattern of conduct designed to deprive Morningside

Village of its rights and benefits under the Policy. More specifically, AmGUARD has failed to consider information presented by Morningside Village, failed to release undisputed monies, and failed to promptly respond to communications from Morningside Village.

54. AmGUARD's failure to pay the Claim has resulted in an unreasonable delay and denial of covered benefits to Morningside Village without a reasonable basis.

55. Morningside Village has fulfilled all duties required of it under the Policy after discovery of the Loss.

56. Morningside Village has performed all conditions precedent and subsequent required under the Policy, or alternatively, have been excused from performance by the acts, representations, and conduct of AmGUARD Insurance Company.

57. As a result of AmGUARD's wrongful acts and omissions, Morningside Village was forced to retain the professional services of Merlin Law Group, PA, who is representing Morningside Village with respect to these causes of action.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief)**

58. Morningside Village realleges and reaffirms Paragraphs 1-57 as if fully set forth herein.

59. The Parties have a dispute as to AmGUARD's obligations to comply with the insurance Policy.

60. Morningside Village has made written demand to AmGUARD for an appraisal of the amount of loss resulting from the Storm pursuant to the Policy's appraisal provision.

61. Despite the written demand made by Morningside Village, AmGUARD has refused to comply with its contractual obligations.

62. AmGUARD's refusal to comply with the appraisal provision is a breach of the insurance contract.

63. There is an actual and justiciable controversy as to AmGUARD's obligation to comply with the insurance policy and the effect of AmGUARD's refusal to do so.

WHEREFORE Plaintiff, The Townhomes at Morningside Village Owners Association, Inc., respectfully requests this Court enter judgment in its favor on its First Claim for Relief and determine: (1) AmGUARD breached the insurance contract by refusing to timely comply with the appraisal provision; (2) AmGUARD is required to resolve any disputes over the amount of loss, including the causation of disputed damages, in the appraisal process; (3) AmGUARD must comply with the terms of the Policy and cannot modify or add terms or conditions that were not in the Policy at the time it was issued; (4) directing the Parties to complete the appraisal; (5) that this action is stayed pending resolution of the appraisal process; and (6) awarding any other such relief as this Court deems just and appropriate.

## SECOND CLAIM FOR RELIEF
(Breach of Contract)

64. Morningside Village realleges and reaffirms Paragraphs 1-63 as if fully set forth herein.

65. Morningside Village purchased an all risk Policy requiring AmGUARD to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

66. The Policy between Morningside Village and AmGUARD is a binding contract.

67. Morningside Village paid premiums and otherwise performed all conditions precedent to recovery of benefits under their Policy with AmGUARD.

68. AmGUARD has denied certain covered damages and continues to delay and deny certain claimed damages as outlined above.

69. AmGUARD refuses to provide the contractually required and covered benefits to Morningside Village.

70. AmGUARD's failure to honor its obligations under the Policy is a breach of contract.

71. AmGUARD's breach of contract has damaged Morningside Village.

72. Morningside Village is entitled to all benefits due and owing under the Policy.

WHEREFORE, Plaintiff, The Townhomes at Morningside Village Owners Association, Inc., respectfully request this Court enter judgment against, Defendant, AmGUARD Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

**THIRD CLAIM FOR RELIEF**
**(Unreasonable Delay and Denial of Payment of Covered Benefits**
**Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

73. Morningside Village realleges and reaffirms Paragraphs 1-72 as if fully set forth herein.

74. Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

75. Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

76. Morningside Village is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

77. AmGUARD had the non-delegable duty to investigate the claim objectively and to advise Morningside Village of coverage under the Policy.

78. AmGUARD has unreasonably delayed payment to Morningside Village. Measured against objective industry standards for claim handling and payment, AmGUARD's actions have unreasonably delayed payment of the loss and damage. As more fully alleged above, AmGUARD has refused to release payment for undisputed hail damages identified by its construction consultant. AmGUARD has failed to consider the additional information provided by Morningside Village's consultants, including hail damages overlooked during the inspection performed by the construction consultant. AmGuard has failed to acknowledge with reasonable promptness pertinent communications with respect to the Claim, including a complete failure to respond to communication over the past five months.

79. AmGUARD delayed and denied payment of covered benefits to Morningside Village without a reasonable basis for its action by preferring the opinions of its consultant without giving due consideration to the contrary opinions of Morningside Village's public adjuster and professional licensed engineer.

80. It is apparent from AmGUARD's conduct in the handling of Morningside Village's Claim that AmGUARD has adopted a plan or approach to delay, as much as possible, its handling and payment of Morningside Village's Claim.

81. AmGUARD delayed and denied payment of covered benefits to Morningside Village without a reasonable basis for its action by its failure to timely pay all amounts not in dispute.

82. As a result of AmGUARD's material breaches of the Policy, Morningside Village has been unable to move forward with repairs to its Property.

83. Based upon the foregoing Paragraphs, Morningside Village is therefore entitled to two times the covered benefit that have been delayed and denied to it, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

WHEREFORE, Plaintiff, The Townhomes at Morningside Village Owners Association, Inc., respectfully request this Court enter judgment against, Defendant, AmGUARD Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

### FOURTH CLAIM FOR RELIEF
(Common Law Bad Faith)

84. Morningside Village realleges and reaffirms Paragraphs 1-83 as if fully set forth herein.

85. AmGUARD owed duties arising from the Policy's implied covenants of good faith and fair dealing, under which AmGUARD covenanted that it would, in good faith and in the exercise of fair dealing, deal with Morningside Village fairly and honestly, faithfully perform its duty of representation, and do nothing to impair, interfere with, hinder, or potentially injure Morningside Village's rights to receive the benefits provided by the Policy.

86. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices, denying and delaying due payment of available benefits under the Policy.

87.　At all times, Morningside Village fulfilled its obligations under the Policy and acted in accordance with its duty of good faith and fair dealing.

88.　AmGUARD has breached its covenant of good faith and fair dealing that it owes to Morningside Village by engaging in a pattern of conduct designed to deprive Morningside Village of its rights and benefits under the Policy. As described in more detail above, AmGUARD and its agents knowingly underestimated the Claim and misrepresented the scope of damage to the Property. Furthermore, AmGUARD has failed to timely pay all amount not in dispute.

89.　As alleged above and among other circumstances, AmGUARD committed numerous, willful or reckless unfair claim settlement practices including, without limitation:

 (a) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance Policy it wrote and issued, including a failure to respond to any communications from Morningside Village's representatives since June 2020;

 (b) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

 (c) Refusing to pay claims without conducting a reasonable investigation based upon all available information, ignoring material information supplied by its insured to "justify" deficient assessments of its liability under the Policy;

 (d) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, such that the damages from the hail event exceeded the amount acknowledged as being owed by AmGUARD;

 (e) Failing to reasonably adjust and compelling Morningside Village to utilize appraisal and/or litigation to recover amounts due under the insurance Policy by failing to timely pay all amounts not in dispute; and

 (f) Encouraging its claim representatives, including Paul Prislupsky and Robert Cartagena, to engage in unfair claims settlement practices against Morningside Village, thereby violating applicable standards in the industry and the laws and regulations of the State of Colorado.

90. AmGUARD has committed such actions willfully and with such frequency as to indicate a general business practice.

91. AmGUARD's unreasonable conduct, including its failure to issue payment for the damages identified by its consultant in October 2019, refusal to communicate with Plaintiff, and complete rejection of additional evidence from Morningside Village's professional engineer has effectively compelled Morningside Village to institute litigation to recover amounts due under the insurance Policy.

92. Morningside Village has suffered and continues to suffer actual damages due to AmGUARD's breach of its covenant of good faith and fair dealing. As a direct and proximate result of AmGUARD's actions, Morningside Village has:

    (a)    Incurred and will incur in the future increased costs to repair, restore and/or replace the significant property damage;

    (b)    Suffered and will continue to suffer damages as a foreseeable and proximate result of the misconduct alleged; and

    (c)    Suffered and will continue to suffer other expenses, including public adjuster fee, engineering fees, meteorological fees, attorneys' fees, investigatory fees, and other losses.

WHEREFORE, Plaintiff, The Townhomes at Morningside Village Owners Association, Inc., respectfully request this Court enter judgment against, Defendant, AmGUARD Insurance Company, for all damages suffered as a foreseeable and proximate result of the conduct alleged herein, pre and post judgment interest, attorneys' fees in accordance with applicable law, costs including expert witness fees, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

93. Morningside Village demands trial by jury with respect to all claims and issues triable to a jury.

Dated: November 12, 2020          Respectfully submitted,

/s/ Jonathan E. Bukowski
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone: 720-665-9680
Facsimile: 720-665-9681
E-Mail: jbukowski@merlinlawgroup.com